O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES AND JAN LLC, <br><br> Plaintiff, <br><br> v. <br><br> AMTRUST INTERNATIONAL UNDERWRITERS, LTD. DAC; and DOES 1 THROUGH 50, <br><br> Defendants. | Case No.: 2:23-cv-08819-MEMF-E S <br><br> **ORDER GRANTING DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 56]** <br><br> **JS-6** |

Before the Court is the amended Motion for Summary Judgment filed by Defendant Amtrust International Underwriters, Ltd. DAC ("AmTrust"). Dkt. No. 56. For the reasons given below, the Motion is GRANTED.

///

///

1

## I.    Factual & Procedural Background

Plaintiff James & Jan LLC ("J&J") owns real estate located at 14820 Mulholland Drive in Los Angeles, CA. *See* Dkt. No. 1-6 ¶ 1 ("1AC").[1] J&J hired contractors to perform home improvement work on the property. *See id.* ¶ 4. Those contractors purchased general liability insurance policies from AmTrust and United Specialty Insurance Company ("USIC"). *Id.* ¶ 5. Disputes arose between J&J and the contractors as to the work performed on the Property. *Id.* ¶ 6. J&J sued the contractors in Los Angeles Superior Court. *Id.* ¶ 7. USIC paid for the contractors' defense and paid a settlement to resolve J&J's claims. *Id.* ¶ 9. As part of that settlement, USIC's claims against AmTrust were assigned to J&J. *Id.* ¶¶ 12–13. But AmTrust denied coverage under the insurance policy and refused to pay for the defense or settlement of the lawsuit. *Id.* ¶¶ 11, 14. Based on these events, J&J brings claims for (1) breach of contract, (2) equitable contribution, and (3) unjust enrichment against AmTrust. *See generally id.*

On March 13, 2026, AmTrust filed the instant Motion for Summary Judgment. Dkt. No. 56 ("Motion"). Pursuant to this Court's standing order, the parties filed a joint memorandum. Dkt. No. 56-1 ("MPA"). The parties accompanied the Motion with a joint statement of uncontroverted facts, *see* Dkt. No. 56-2 ("SUF"), and a joint evidentiary appendix, *see* Dkt. No. 56-3. Each party also filed objections to the other's evidence. *See* Dkt. No. 56-9 ("J&J Obj."); Dkt. No. 56-10 ("AmTrust Obj.").

This Court held a hearing on the Motion on April 9, 2026, after which it took the Motion under submission.[2]

---

[1] This Court includes the allegations in the Complaint as background only. It does not make any finding as to the truth of those allegations at this time, except as discussed in Section III *infra* (the Court's Findings of Fact).

[2] This Court also set an Order to Show Cause hearing as to why sanctions should not issue due to multiple possible violations of the Civil Local Rules and this Court's Standing Order. Though this Court decides the Motion on the merits in this Order, it notes that the parties' filings are again out of compliance with this Court's Standing Order. The Standing Order sets a fifty-page limit for the MPA—which the parties' filing exceeds. *See* Civil Standing Order § IX(D).

## II.   Applicable Law

### A.   Motions for Summary Judgment

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry its burden of production, the moving party must either: (1) produce evidence negating an essential element of the nonmoving party's claim or defense; or (2) show that there is an absence of evidence to support the nonmoving party's case. *Id.*

Where a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. *Id.* at 1102–03. In such cases, the nonmoving party may defeat the motion for summary judgment without producing anything. *Id.* at 1103. However, if a moving party carries its burden of production, the burden shifts to the nonmoving party to produce evidence showing a genuine dispute of material fact for trial. *Anderson*, 477 U.S. at 248–49. Under these circumstances, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the motion for summary judgment shall be granted. *Id.* at 322 ("Rule

56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *See id.* "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. *Id.* 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252.

To carry its ultimate burden of persuasion on the motion, the moving party must demonstrate that there is no genuine issue of material fact for trial. *Nissan Fire*, 210 F.3d at 1102; *Celotex Corp.*, 477 U.S. at 323.

/ / /

III.    **Findings of Fact**[3]

The Court finds the following material facts are established under Federal Rules of Civil Procedure 56(a) and 56(g).

### A.  The Underlying Action

J&J owns a single-family residence located at 14820 Mulholland Drive in Los Angeles (the "Property"). SUF ¶ 2. J&J hired Walter Rivera, Wilifred Rivera, Alex Rivera, Vladimir Rivera, and Cornerstone Builders LLC (collectively, the "Contractors") to remodel the Property. *Id.* ¶¶ 1–2. J&J's contract ("the Contract") with the Contractors for the Property remodeling (the "Project") was executed on November 5, 2014. *Id.* ¶ 2. AmTrust and USIC insured Wilifred Rivera, one of the contractors working on the Project. *Id.* ¶¶ 1, 34, 40.

After the Contract was executed, disputes arose about the quality and completeness of the Contractors' work. *Id.* ¶ 5. J&J ultimately terminated the Contractors. *Id.* ¶ 6. By that time, J&J had paid the Contractors over $500,000 for the Project. *Id.*

J&J filed a lawsuit against the Contractors in Los Angeles Superior Court (the "Underlying Action"). *Id.* ¶ 7. USIC accepted and provided a defense to the Contractors in the Underlying Action. *Id.* ¶ 8. But AmTrust declined to defend the Contractors. *Id.* ¶¶ 9, 51.

---

[3] The facts set forth below are taken from the parties' Statement of Uncontroverted Facts. *See* SUF. To the extent that any statements of fact are omitted, the Court concludes they are not material to the disposition of this Motion. To the extent that any of the facts set below were allegedly disputed, the Court concludes that no actual dispute exists or that the adopted language resolves the dispute.

In making these Findings of Fact, the Court considered the parties' evidentiary objections. Many of these objections were unconvincing to the extent they were based on lack of foundation, hearsay, and relevance objections that are duplicative of the summary judgment standard itself. *See Sandoval v. County of San Diego*, 985, F.3d 657,665 (9th Cir. 2021). Furthermore, the Ninth Circuit has recognized that "a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (quoting *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) (emphasis added)). In other words, when evidence is not presented in admissible form at summary judgment but could be later presented in an admissible form at trial, a court may still consider the evidence for the purposes of summary judgment. *Id.* at 1037; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). For these reasons, to the extent the Court relies upon evidence to which the parties object, the objections are OVERRULED. To the extent the Court does not, the objections are DENIED AS MOOT.

The Underlying Action was resolved on September 29, 2022, pursuant to a written settlement agreement. *Id.* ¶ 10. Among other things, that settlement agreement assigned to J&J any claims that USIC could bring against AmTrust. *Id.*

**B. Insurance Coverage of Wilifred Rivera**

Builders and Tradesman Insurance Services ("BTIS") is an insurance wholesale company that acts as an intermediary between retail insurance agents or brokers and insurance carriers. *Id.* ¶ 31. In this role, it is referred to as a Managing General Underwriter. *Id.* In 2015 and 2016, BTIS acted as AmTrust's Managing General Underwriter. *Id.* ¶ 33. This meant that it was authorized to accept and review applications for a wide range of commercial insurance lines including commercial general liability ("CGL") insurance. *Id.* ¶ 32. When BTIS determines that an applicant for insurance meets AmTrust's eligibility requirements, BTIS analyzes the applicant's data to determine premium amounts based on perceived exposure. *Id.* ¶ 38. Factors that inform this calculation include: the size of the applicant's current or planned projects, the largest of the applicant's current or planned projects, and a number of trade-specific eligibility questions designed to elicit information relative to the type of work performed, subcontracted, or supervised by the applicant. *Id.* ¶ 39.

Pursuant to an agreement with AmTrust and in compliance with all applicable laws, BTIS processed Wilifred Rivera's application (the "Application") for CGL insurance. *Id.* ¶¶ 34, 40. BTIS received the Application on January 26, 2015. *Id.* ¶ 18. Rivera had been under contract for the Project for approximately two months at that point. *Id.* ¶ 19. But the Application did not disclose the existence, size, nature, or amount of the Project. *Id.* ¶¶ 44–45. When the application asked for Rivera's "largest current or planned job," Rivera responded, "remodel bathroom." *Id.* ¶ 20. When the application asked for Rivera's "value of largest current or planned job," Rivera responded, "$8,000." *Id.* ¶ 21. When the application asked for Rivera's work's "classification schedule," Rivera responded, "carpentry – residential." *Id.* ¶ 22. And, when the application asked Rivera if he was engaged as a construction manager, Rivera answered, "no." *Id.* ¶ 24. In reality, the Project involved a large-scale remodeling beyond that of one bathroom, was valued at approximately $650,000, and involved extensive trades beyond carpentry. *Id.* ¶¶ 23, 28. And the Contract specifically identified Rivera as a construction manager. *Id.* ¶ 25.

## IV.   <u>Discussion</u>

As a threshold matter, J&J argues that this Court should not reach the merits of the Motion because it is untimely. *See* MPA at 12–19. On the merits, AmTrust argues that it is entitled to summary judgment for four independent reasons. First, it contends that Rivera's concealment of material facts in his insurance application allows AmTrust to assert concealment as a complete defense to the action, and that it is entitled to summary judgment on that defense. *Id.* at 28–39. Second, AmTrust argues that J&J has failed to offer evidence from which a reasonable factfinder could determine J&J's damages. *Id.* at 39–47. Third, AmTrust argues that this Court should apply judicial estoppel to bar J&J's claims because J&J failed to disclose its assignation of USIC's claims in bankruptcy, but now attempts to pursue those claims in separate litigation. *Id.* at 47–53. Fourth, AmTrust argues that J&J lacks standing to pursue this claim because it now belongs to the bankruptcy estate. *Id.* at 53–60.

For the reasons below, this Court concludes that the Motion is timely, and that AmTrust has shown that it is entitled to summary judgment on its misrepresentation defense.

### A.   The Motion is timely.

J&J first argues that this motion should be denied as untimely because it fails to meet Rule 16's requirement that a schedule be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). For the reasons below, the Motion is timely, so this argument is rejected.

As background, an explanation of the procedural history of the parties' summary judgment filings is in order. On October 22, 2025, the parties filed their first motion for summary judgment. *See* Dkt. No. 24. It was noticed for hearing on December 18, 2025. *Id.* On November 6, 2025, J&J filed an opposition memorandum. *See* Dkt. No. 28. On November 13, 2025, AmTrust filed a Reply. *See* Dkt. No. 29. The opposition memorandum alleged that AmTrust failed to meet and confer. Dkt. No. 28 at 1. So this Court issued an Order to Show Cause, dischargeable "upon an amended filing of an MPA that is in full compliance with L.R. 7-3."[4] Dkt. No. 30. The parties, in addition to their

---

[4] At this stage, the parties' filings were out of compliance with this Court's Standing Order for at least three reasons. First, this Court's Standing Order contemplates that the parties' full briefing on any summary judgment motion is due, at

respective responses as to why sanctions should not issue, filed an amended MPA. Because the amended MPA did not cure the noncompliance with this Court's Standing Order, this Court denied the summary judgment motion without prejudice. Dkt. No. 36 at 3. In a joint stipulation, the parties then agreed that the motion for summary judgment would be refiled and heard "on April 9, 2026, or as soon thereafter as the Court's calendar permits." Dkt. No. 37 at 5. They specifically agreed that allowing the MSJ to proceed would "guide pretrial planning," "streamline the case," and "avoid unnecessary motion practice." *Id.* at 4. This Court granted that stipulation. Dkt. No. 50. And, in accordance with that stipulation, the instant Motion was filed, noticed for hearing on April 9, 2026. *See* Motion.[5]

To that end, this Motion is timely because the parties jointly stipulated—and this Court approved—a modification to the Civil Trial Order. Indeed, when this Court granted the parties' stipulation, it clarified that the Court was revising the Civil Trial Order in contemplation of the parties' then-pending motion for summary judgment. Dkt. No. 50 at 1. And this Court's Civil Standing Order clarifies that continuances are granted "only upon a showing of good cause." Civil Standing Order at 18. Taken together, this means that the parties' stipulated agreement and explanation behind the joint request for a continuance—which this Court approved—is supported by good cause.

J&J's arguments to the contrary do not persuade this Court otherwise. J&J contends that "[f]ederal courts have *unanimously* rejected the argument that stipulations between parties can constitute good cause for scheduling order modifications," but supports the argument with only one

---

minimum, forty-two days before the hearing. *See* Civil Standing Order at 9. Second, the Standing Order requires summary judgment motions to be fully integrated (that is, in one filing). *Id.* at 8. And third, the memorandum was not organized such that "each issue (or sub-issue) raised by a party is immediately followed by the opposing party's response." *Id.*

[5] Shortly before filing the Motion, AmTrust requested leave to file a motion for judgment on the pleadings. Dkt. No. 51. J&J opposed that request. Dkt. No. 53. This Court ultimately found that AmTrust had not sufficiently explained why diligence had prevented it from filing for judgment on the pleadings earlier, but allowed the parties to amend the summary judgment motion to address AmTrust's newly brought arguments. Dkt. No. 55. The Court ordered that the parties could keep the April 9 hearing if they refiled the summary judgment motion within fourteen days of the order. *Id.* The parties did so. *See* Motion. So the final amendment to the Motion was in compliance with this Court's orders and did not cause any further delay as to the hearing date.

nonbinding citation. *See* MPA at 14 (emphasis added). In fact, this argument appears to have it backwards: This Court has already found good cause in part *because* the parties jointly explained that good cause existed to support the continuance. Nor do any of J&J's cases address situations where, as here, the parties jointly proposed an agreed-upon schedule for the refiling of a motion and the Court approved it. J&J appears to understand this at other points, where it notes that "judicial approval of stipulations affecting scheduling order deadlines must itself be based on a good cause determination under Federal Rule 16(b)(4)." MPA at 18. That is what happened here. Curiously, J&J's position appears to suggest that a stipulation which J&J itself entered was not, as this Court requires, supported by a showing of good cause. But, even to the extent that J&J seeks that this Court reconsider its granting of the joint stipulation, Dkt. No. 50, J&J offers no reasons why this Court should do so.

Even if this were not so, this Court is disinclined to treat the delay in this Motion's filing—which was principally caused by the parties' failures to abide by this Court's Standing Order and the Local Rules—against AmTrust on this record. The parties strongly dispute which party is responsible for the deficiencies in the summary judgment filings. *See* Dkt. No. 35 at 2 (discussing the parties' respective Order to Show Cause responses). So, even if this Motion had not already been excused for filing on the present schedule, it is not clear that J&J's own errors did not cause the earlier iterations of the summary judgment filings from being rejected.

In sum, the Motion is timely; even if it were not, this Court is not persuaded that Rule 16 should lead to its denial. J&J's argument as to this basis is denied.

### B. AmTrust is entitled to summary judgment on the basis of Rivera's material misrepresentation.

First, at issue is whether AmTrust has shown that there is no genuine issue of fact as to Rivera's material misrepresentations[6]—and, if so, whether it is entitled to summary judgment on that basis. The Court addresses both questions below.

---

[6] "Neglect to communicate that which a party knows, and ought to communicate, is concealment." Cal. Ins. Code § 330. "Concealment, *whether intentional or unintentional*, entitles the injured party to rescind insurance." *Id.* § 331 (emphasis added). At the hearing, J&J contended that AmTrust was not entitled to summary judgment because it could not

i. There is no genuine dispute that Rivera made misrepresentations.

AmTrust first argues that it is entitled to summary judgment because it has shown that it is undisputed that its insured, Rivera, concealed and misrepresented material facts in his insurance application. For the reasons below, AmTrust has proven that no genuine dispute exists as to this fact.

As this Court has already discussed in its Findings of Fact, the parties do not appear to materially dispute that there were misrepresentations in Rivera's application. Indeed, the parties appear to agree that Rivera's application contained at least three misstatements or omissions. First, Rivera's application listed that his largest current or planned job was a bathroom remodeling—when, in reality, the Project was a $650,000 endeavor that was not limited to one bathroom. SUF ¶¶ 20, 23, 28. Second, Rivera's application represented that his work's classification schedule was residential carpentry—when, in fact, the Project involved several trades beyond carpentry. *Id.* ¶¶ 22–23, 28. Third, Rivera's application represented that Rivera was not engaged as a construction manager— when the Contract specifically identified Rivera as a construction manager. *Id.* ¶¶ 23, 25, 28.

To be sure, J&J offers no meaningful factual opposition to any of the uncontroverted facts discussed in the preceding paragraph. Instead, it raises the same objection to most of these paragraphs: "Hearsay and irrelevant as there is no admissible evidence Wilifred Rivera signed the Application on which Defendant relies." *Id.* ¶¶ 22–29. These objections are unavailing.

First and foremost, AmTrust has sufficiently established that BTIS received the Application and relied on the representations therein in extending AmTrust insurance. Not only has J&J not proffered any evidence to suggest that the Application is inauthentic or does not contain Rivera's signature[7]—but even if it did, this would not matter. Simply put, BTIS and AmTrust relied on the Application, the Application contained material misrepresentations, therefore AmTrust can raise a

---

demonstrate Rivera intentionally deceived AmTrust. California insurance law does not support intent as a separate requirement in a concealment defense to a contribution action. *See Williamson & Vollmer Eng'g, Inc. v. Sequoia Ins. Co.*, 134 Cal. Rptr. 427, 432 (Ct. App. 1976) ("The trial court further observed in its decision, 'Williamson & Vollmer's failure to disclose this information constituted misrepresentation and concealment of material facts, whether *the non-disclosure was intentional or unintentional*.' There is substantial evidence to sustain such a conclusion." (emphasis added)). Nor did J&J, at the hearing, offer any authority in support of the proposition that a showing of intent is required.

[7] J&J did not argue, nor did it present evidence in support of the argument, that AmTrust had any reason to know at the time of receipt of Rivera's insurance application that the signature was forged. Nor has J&J argued, or presented evidence in support of the argument, that AmTrust has an unmet duty of inquiry under the circumstances which required it to investigate the authenticity of the insurance application upon receipt.

complete defense. There is no evidence that BTIS and AmTrust did not rely on the Application and actually relied on some other application that did not contain material misrepresentations.

In short, it is not hearsay, because it is not being offered for the truth of the representations[8]; it is relevant because AmTrust can establish through admissible evidence that it was relied upon; and it is admissible because there is no other meritorious objection to it.

In opposition to summary judgment on this basis, J&J also argues that this Court should equitably estop AmTrust from stating its misrepresentation defense through an application of the laches doctrine. "The very purpose of laches as an equitable doctrine—and the reason it differs from a statute of limitations—is that the claim is barred because the plaintiff's delay occasioned the defendant's prejudice." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001). J&J argues that AmTrust must have known that it had a misrepresentation defense by November 2021, and that it concealed that defense from USIC (as AmTrust's coinsurer) and J&J (as USIC's assignee) until the instant lawsuit. MPA at 32. This, J&J explains, caused J&J to enter into a settlement agreement with USIC in June 2022 without knowing that the assigned rights it received from USIC were subject to a misrepresentation defense. *Id.* at 33. In J&J's words:

> Plaintiff would not have accepted USIC's assignment of claims against AmTrust had Plaintiff been advised by AmTrust they contended they could assert they could avoid liability under the policy they issued based on a claim that Wilifred Rivera misrepresented matters in the Application he allegedly provided to AmTrust. Plaintiff would have required a significantly greater amount of money from USIC to settle the Underlying Action had AmTrust notified Plaintiff that it believed Wilifred Rivera had made misrepresentations in his Application.

*Id.* But, even if this were so, J&J cites to no authority in support of the application of laches towards a defense, nor towards an affirmative obligation that AmTrust had—prior to this litigation—to inform J&J of its misrepresentation defense.

To that end, J&J's proffered authorities miss the mark. As a general matter, none of J&J's cases support the application of laches to a defense—the doctrine traditionally acts to "bar[] a *claim*

---

[8] Counsel, at the hearing, cited *Taggart v. Super Seer Corp.*, 40 Cal. Rptr. 2d 56 (Ct. App. 1995), to further argue that the insurance application does not meet the business records exception and is therefore inadmissible hearsay. But as the document is not offered to prove the truth of the matter asserted, it is of no moment whether it would qualify as a business record.

if unreasonable delay causes prejudice to the *defendant*." *Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elecs. Corp.*, 518 F.2d 913, 926 (9th Cir. 1975) (emphasis added). The portions that J&J quotes from *Tenneco Automotive Operating Co. v. Visteon Corp.* confirm this. *See* 375 F. Supp. 2d 375, 380 ("For a defense of laches, the *defendant* has the burden of proving that: (1) the *plaintiff delayed in filing suit* for an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant; and (2) the *defendant* suffered material prejudice or injury as a result[.]" (emphasis added)). This is why, there, the Court denied plaintiff's motion for summary judgment against defendant's laches defense. *Id.* at 382. And application of the doctrine as J&J presents it against AmTrust would have anomalous results: Because defenses, unlike claims, are not brought affirmatively, J&J has not shown that it was entitled to advance disclosure of a defense that AmTrust intended to bring, in the event J&J sued AmTrust. In sum, as AmTrust notes, J&J has not shown that AmTrust had a duty to disclose "the existence or basis of any potential concealment or recission defense to third parties such as Plaintiff." MPA at 37.

J&J's California authorities, some of which appear not to address laches at all, are similarly inapposite. They explain that "an insurer c[an]not rely on misrepresentations in an insurance application to avoid liability where the misrepresentations were contradicted by other information known to the insurer when it issued a policy." *DuBeck v. Cal. Physicians' Serv.*, 184 Cal. Rptr. 3d 743, 752–53 (Ct. App. 2015). But J&J has not argued that AmTrust should have known, at the time Rivera applied for insurance, that the representations in his application were false, so the holding is inapposite. And there, unlike here, the insurer had explicitly stated that it had discovered the misrepresentations and decided not to rescind—then asserted a right to rescind over two years later in litigation. *Id.* at 751. So, as AmTrust argues, the holding in *DuBeck* does not inform the outcome in this case. MPA at 37. And J&J argues that "[l]aches should not be determined in a summary judgment proceeding," presumably asking this Court to find that triable issues of fact remain as to whether laches apply and to allow this to proceed to trial. *Id.* at 36. But J&J's case authority for this proposition undercuts, rather than confirms, this argument. *Bono v. Clark*, 128 Cal. Rptr. 2d 31 (Ct. App. 2002) (citing *Johnson v. City of Loma Linda*, 5 P.3d 874 (Cal. 2000), where a trial court's "laches determination was the basis for its grant of summary judgment").

In any event, to defeat summary judgment, J&J as the nonmovant bears the burden to demonstrate that triable issues of material fact preclude judgment in AmTrust's favor. *See Anderson*, 477 U.S. at 248–49. But J&J has not suggested, nor identified any evidence, supporting the conclusion that anyone but Rivera signed the insurance application. Nor did counsel for J&J raise this argument at the hearing on the Motion. Without more, J&J does not make the requisite showing on this basis.

For these reasons, this Court finds no genuine dispute as to whether Rivera made misrepresentations in applying for insurance coverage from AmTrust.

ii.   There is no genuine dispute that Rivera's misrepresentations were material.

A misrepresentation must be material to justify recission of insurance. *Mitchell v. United Nat'l Ins. Co.*, 25 Cal. Rptr. 3d 627, 639 (Ct. App. 2005). For the reasons below, this Court finds that J&J has not raised a triable issue of fact as to materiality.

First, it is not clear that J&J disputes materiality: AmTrust explains why the misrepresentations were material in the MPA. *See* MPA at 28–29. But in the MPA, J&J does not appear to argue that, if any misrepresentations occurred, that they were not material, or that a reasonable factfinder could find that the representations are not material. So J&J has arguably conceded that, given that this Court has overruled J&J's objections to the Rivera insurance policy evidence, that the insurance application establishes *material* representations.

Even if J&J disputed it in the MPA, this Court would find no triable issue of fact. "The test for materiality is whether the information would have caused the underwriter to reject the application, charge a higher premium, or amend the policy terms, had the underwriter known the true facts." *Mitchell*, 25 Cal. Rptr. 3d at 638. "This is a subjective test; the critical question is the effect truthful answers would have had on [*this* insurer], not on some 'average reasonable' insurer." *Imperial Cas. & Indem. Co. v. Sogomonian*, 243 Cal. Rptr. 639, 644 (Ct. App. 1988); *see also Williamson*, 134 Cal. Rptr. at 433 ("The materiality is evident from the terms of the policy, and the fact the question was asked."). In the SUF, AmTrust explains that, had Rivera truthfully answered the questions in the insurance application, AmTrust would have charged Rivera a higher premium for the insurance policy. SUF ¶ 28. J&J's opposition is threefold: It argues that (1) USIC did not

charge Rivera a higher premium, (2) insurers often discount their stated premiums (citing the Colletto Declaration), and (3) there is no admissible evidence that Rivera signed the Application. *Id.* As this Court has already explained, it has overruled J&J's third argument insofar as it raises evidentiary objections about the Application. So it addresses the first and second below.

As to the first argument, the amount that USIC charged Rivera does not appear relevant at this stage. "[W]hen there is undisputed evidence that false information was given in an application for insurance and the insurer issued a policy in reliance upon this information, the materiality of a misrepresentation or concealment may be established as a matter of law." *Mitchell*, 25 Cal. Rptr. 3d at 639. So the fact that another insurer issued Rivera an insurance policy that did not have a higher premium does not bear on this analysis. Moreover, J&J has not established that Rivera gave USIC different answers. The attorney's declaration it cites in support of this argument only states:

> The fact that USIC sold Wilifred Rivera a policy for $2,160.00 that had aggregate liability of $2,000,000, Exhibit 6, p, 4 "Total Cost of Policy", the amount paid to USIC demonstrates the market for $2,000,000 of liability coverage was well below $2,500.000. USIC had the Cont[r]act when it picked up the defense, paid defense costs and paid the Settlement Agreement.

Dkt. No. 26-5 ¶ 24 ("Bisno Decl."). It does not cite any evidence on the record, nor is this Court aware of any, to support the allegation that USIC was aware of the true nature of Rivera's contract with J&J at the time that it issued its insurance policy to Rivera. So it is not clear that USIC's insurance relationship to Rivera is analogous or relevant to understanding AmTrust's assessment of materiality. And, even if USIC was identically situated to AmTrust, under *Sogomonian*, evidence showing what another "reasonable insurer" would do is immaterial to what *AmTrust* relied upon. 243 Cal. Rptr. at 644. So case law appears to foreclose this argument, and J&J fails to show that USIC's granting of Rivera's insurance means that a reasonable juror could find that Rivera's misrepresentations to *AmTrust* were not material.

Second, J&J's argument that insurers often discount their stated premiums is similarly unavailing. Again, *Mitchell* appears to foreclose the relevance of other insurers' behavior: This Court has already found that it is undisputed that Rivera's application contained false information, and that the parties do not appear to dispute that AmTrust relied on the statements in Rivera's

14

application. Simply put, the fact that insurers generally discount their premiums does not mean that the insurance application's requested information is not used to set premiums—or, therefore, that it is not material. If information about the size and nature of projects was immaterial to an insurer's decision, it is hard to imagine what kind of information would be material.

Furthermore, the argument fails because it is not supported by evidence that could be presented in admissible form. The sole source that the SUF cites for J&J's opposition is "Decl. Colletto ¶¶ 5 and 6." SUF ¶ 28. This Court understands the Colletto Declaration to be a reference to a document attached to an earlier filed version of the motion for summary judgment.[9] *See* Dkt. No. 26-2 ("Colletto Decl."). The parties agree that J&J did not disclose Colletto as an expert. *See* SUF ¶ 15. But the Colletto Declaration offers an expert opinion: Colletto attests that she is "an insurance broker specializing in placing insurance for contractors" with thirty years of experience, *see* Colletto Decl. ¶ 3, that she reviewed the Contract and the Application, *id.* ¶ 4, and offers conclusions as to the nature of the contractors liability insurance market and how insurance companies set premiums "in many instances." *id.* ¶¶ 6–8. In short, Colletto's opinions are plainly predicated on her "expert[ise] by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. So the fact that Colletto was not disclosed as an expert precludes the use of her testimony. *See* Fed. R. Civ. P. 26(a)(2) (noting requirement for disclosure of expert witness and report); Fed. R. Civ. P. 37(c) (noting that failure to identify a witness under Rule 26(a) results in that "the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at trial"). And separately, it does not appear that the Colletto Declaration demonstrates any requsite foundation under Rules 702(c) or (d). For both reasons, the Colletto Declaration cannot support J&J's arguments at this stage. And, as J&J cites no other evidence for the argument that insurers often discount their stated premiums, the argument lacks factual support.

---

[9] That declarant's name does not appear in the parties' joint evidentiary appendix. *See* Dkt. No. 56-3. And the document is an attachment to a prior filing, not the instant Motion. *See* Collette Decl. The parties' filings are further out of compliance with this Court's Civil Standing Order in that they are not "accompanied by one separate, tabbed appendix of declarations and written evidence (including documents, photographs, deposition excerpts, etc.)," with "supporting materials . . . submitted as one CM/ECF filing, with each declaration or item of evidence submitted as a separate attachment to the CM/ECF filing." Civil Standing Order § IX(D).

In sum, J&J fails to create a triable issue on fact on the materiality of the misrepresentations. Nor does it show that a reasonable factfinder could find that, but for Rivera's misrepresentations, AmTrust would not have issued the policy that it did. For these reasons, AmTrust has established materiality as a matter of law.

\* \* \*

For these reasons, this Court finds that no triable issues remain as to this defense, and AmTrust has shown it is entitled to summary judgment as to Rivera's material misrepresentations.

      iii.  <u>Because AmTrust has shown no triable issues of fact remain as to its material misrepresentation defense, it is entitled to summary judgment on all claims.</u>

Given AmTrust has proven its material misrepresentation defense at this stage, summary judgment in AmTrust's favor on all three claims is warranted.

"A misrepresentation or concealment of a material fact in an insurance application also establishes a complete defense in an action on the policy." *Superior Dispatch, Inc. v. Ins. Corp. of N.Y.*, 104 Cal. Rptr. 3d 508, 520–21 (Ct. App. 2010), *as modified on denial of reh'g* (Feb. 22, 2010)

J&J's first and second causes of action, for breach of contract and equitable contribution, are expressly premised on the argument that AmTrust breached its insurance contract by failing to defend Rivera. *See* Compl. ¶¶ 21, 33; *see also Superior Dispatch*, 104 Cal. Rptr. 3d at 522 (concluding that misrepresentation defense is a complete defense in a breach of contract claim).

And similarly, J&J's third cause of action (for unjust enrichment) fails. "The elements of an unjust enrichment claim are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Ct. App. 2008). Having found that AmTrust has established a complete defense to enforcement of the insurance contract as a matter of law, J&J does not appear to advance any other argument as to why AmTrust's recission of the insurance contract would be unjust.

In sum, summary judgment on all claims is warranted.

///

## V. **Conclusion**

For the reasons discussed above, AmTrust's Motion is GRANTED.

IT IS SO ORDERED.

Dated: May 29, 2026

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

17